IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN E. McLAURIN,

      Plaintiff,

v.                                   Case No. 2:11-cv-00090

JIM RUBENSTEIN, Commissioner,
DAVID BALLARD, Warden,
PAUL PERRY, Associate Warden of Security,
JASON COLLINS, Associate Warden of Programs,
JAMES McCLOUD, Segregation Commander,
MARK CRAWFORD, Librarian Supervisor,
BRIAN GREENWOOD, Correctional Hearing Officer,
CURTIS DIXON, Lieutenant, and OTHER UNNAMED
CORRECTIONAL OFFICERS, MOUNT OLIVE
CORRECTIONAL COMPLEX,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On February 9, 2011, Plaintiff filed a Complaint alleging various federal constitutional and state law claims concerning his conditions of confinement at the Mount Olive Correctional Complex, in Mount Olive, West Virginia.  This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

### *The plaintiff's Complaint*

The plaintiff is serving sentences on one count of abduction/kidnapping and five counts of sexual assault in the first degree and is presently incarcerated at the Mount Olive Correctional Complex.  The plaintiff's Complaint alleges that, while confined in the general population area of the Mount Olive Correctional Complex ("MOCC"), in April of 2008, he received nine (9) violations reports, and was scheduled for a disciplinary hearing before Correctional Hearing Officer Brian Greenwood, a named defendant herein, on or about April 30, 2008.   The Complaint further alleges that the plaintiff was moved from general population and placed into a segregation unit at that time.  (ECF No. 4 at 4, ¶ 16.)

The plaintiff's Complaint further alleges that, despite the plaintiff's written request to be present for the disciplinary hearing, with an inmate representative, and his request to present witness testimony, the hearing was held in his absence, and no evidence was presented on his behalf.  The hearing report indicates that the plaintiff refused to attend the hearing.  (*Id.*, ¶¶ 17-18.)  Although it is somewhat unclear from the plaintiff's Complaint as to whether he is referring only to the disciplinary hearing in April of 2008, the plaintiff asserts as follows: "in 2008, Plaintiff faced numerous false disciplinary charges predicated on the personal and racial bias of defendant Brian Greenwood, Correctional Hearing Officer (hereinafter CHO).  Plaintiff file[d] motions seeking the CHO recusal with defendant David Ballard, to no avail." (*Id.* at 5, ¶ 24.)

The plaintiff's Complaint further alleges that, on May 8, 2008, he appealed his disciplinary action to Warden David Ballard, in accordance with Policy Directive 325.00.

(*Id.* at 4, ¶ 19).  The plaintiff's Complaint further alleges that, on June 9, 2008, he received a Memorandum from the Warden's Office, drafted by Acting Warden William Vest, in which Acting Warden Vest vacated the two Class One violations that were part of the nine (9) violations with which the plaintiff was charged.  (*Id.*)  However, the plaintiff further alleges that, on June 23, 2008, he received another Memorandum in which Warden Ballard overruled the prior decision of Acting Warden Vest and reinstated the guilty findings on all of the violations.[1] (*Id.*)

The plaintiff's Complaint further alleges that, on June 2, 2008, the plaintiff was notified that he was scheduled to appear before the MOCC Administrative Segregation Committee on June 4, 2008.  (*Id.,* ¶ 20.)  The plaintiff allegedly made a request to Acting Chairperson Richard Carte (who is not a defendant herein) to have staff witnesses at the hearing but, according to the Complaint, all witnesses were either unavailable or declined to participate.  (*Id.*)  The Committee recommended that the plaintiff be placed in Administrative Segregation, and be required to complete the prison's Quality of Life Program.  The plaintiff claims that this decision was made without providing him any procedural or substantive due process.  (*Id.,* ¶¶ 20, 21.)

The plaintiff's Complaint alleges that he has filed a number of grievances concerning his conditions of confinement in Administrative Segregation, and concerning the Quality of Life (QOL) Program.  The Complaint details the filing of ten

---

[1]  The violations reports indicate that the plaintiff received sixty (60) days in punitive segregation and a sixty (60) day loss of privileges for the two Class One violations, and thirty (30) days in punitive segregation and a thirty (30) day loss of privileges, suspended to six (6) months of probation, on the rest of the charges.  The plaintiff's time in punitive segregation was scheduled to run from April 22, 2008 to June 21, 2008.  (ECF No. 34, Attach. 4 at 1-6.)

3

(10) grievances in 2008, and fifteen (15) grievances in 2009, all of which the plaintiff alleges were appealed to the G-3 stage.  (*Id*. at 4-5, ¶¶ 22, 25.)

The plaintiff's Complaint then specifically alleges that, on September 17, 2009, he filed a grievance with defendant James McCloud, asserting that he had been improperly treated in a QOL Review Hearing[2] that same day (09-MOCC-Q1-442).  (*Id*. at 5, ¶ 26.) The plaintiff's Complaint further alleges that, on September 22, 2009, defendant McCloud answered the plaintiff's grievance by stating that the plaintiff would be charged with another rule violation for "insubordination/insolence" for filing the September 17th grievance.  The plaintiff further claims that "[t]his incident occurred as a result of MOCC's Quality of Life Review Committee orchestration."  (*Id*. at 6, ¶ 27.)  Paragraph 27 of the Complaint further states:

> During said hearing Plaintiff tried explaining to the Committee that its acts were improper under *MOCC Operational Procedure 326.01*, based on *ACA Standard 4-4250*, and illegal under *West Virginia Code § 62-13-4*. That is, Plaintiff's placement in Administrative Segregation/Quality of Life Program was both improper and illegal because he had not been convicted of a class #1 violation per # 326.01.

(*Id*.)

The plaintiff's Complaint further alleges that, following these actions by prison officials, he and several other inmates filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County, which was denied by the Circuit Court on January 21, 2009, for failure to exhaust administrative remedies.  (*Id*. at 6, ¶ 30.)  According to the Complaint, the appeal to the Supreme Court of Appeals of West Virginia (the SCAWV)

---

[2]  The plaintiff uses interchangeably the terms "Administrative Segregation Committee," and "Quality of Life Review Committee."   The undersigned understands that this committee may also be called the "Progressive Reintegration Committee" or "PRO Committee."   The undersigned will uniformly refer to this committee as the Administrative Segregation Committee.

from the denial of the Fayette County habeas corpus petition was refused on March 27, 2009. (*Id.* at 6, ¶ 31.) The plaintiff states that, on July 21, 2009, he filed a Petition for a Writ of Mandamus in the Circuit Court of Kanawha County, addressing similar claims, which was also denied. (*Id.*, ¶ 32.)

The plaintiff's Complaint alleges, without further factual support, that the defendants acted "with racial prejudice and personal bias, falsified the records and presented fabricated, incriminating evidence against the plaintiff to illegally remove him from the general population." (*Id.*, ¶ 33.) The plaintiff's Complaint further states:

> As a direct and proximate cause of these improper and unlawful actions, these defendants denied Plaintiff his fundamental rights, these being the Deprivation of Liberty, Denial of Access to the Courts, Procedural and Substantive Due Process Rights, Unconstitutional Cruel and Unusual Punishment in Violation of the Eighth Amendment, Forced Mental Anguish, and the Dismissal of his Habeas Petitions and Civil Lawsuits – all while being required to expend large sums of money for legal defense, and while being prevented from pursuing educational, vocational and employment opportunities.

(*Id.*, ¶ 34.)

The plaintiff's Complaint further alleges that the acts of each of the defendants, separately and in concert, led to the deprivation of the following civil and constitutional rights:

    a.    a denial of plaintiff's Fourth, Fifth, Eighth, Eleventh and Fourteenth Amendment rights by unlawfully and illegally seizing him without probable cause, causing him unlawful detention and subjecting him to known false convictions;

    b.    a denial of plaintiff's Fourth, Fifth, Eighth, Eleventh and Fourteenth Amendment rights by knowingly and willfully submitting false incident reports which led to plaintiff's being falsely convicted;

    c.    a denial of plaintiff's Fourth, Fifth, Eighth, Eleventh and Fourteenth Amendment rights by permitting and encouraging known perjury

testimony by defendants to be produced at the disciplinary and reclassification hearings;

d.   a denial of plaintiff's Fourth, Fifth, Eighth, Eleventh and Fourteenth Amendment rights by conspiring to suborn perjury Officers testimony;

e.   a denial of plaintiff's Fourth, Fifth, Eighth, Eleventh and Fourteenth Amendment rights by knowingly, willfully and wrongfully concealing information that would have assisted plaintiff in his defense against serious disciplinary charges and reclassification;

f.   a denial of plaintiff's rights under the United States and West Virginia Constitutions, including but not limited to, Article III, Section 10.

(*Id.* at 7, ¶ 35.)

The plaintiff's Complaint contains ten "Counts" alleging claims against the various defendants as follows:

- COUNT I -  The plaintiff alleges that numerous false disciplinary reports were filed against him in deprivation of his constitutional and civil rights – 42 U.S.C. § 1983 (against defendants Rubenstein, Ballard, Perry, McCloud, Crawford, Greenwood, Dixon and unnamed officers)

- COUNT II – The plaintiff alleges both a failure to conduct magistrate hearings and a biased correctional hearing officer which effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983 (against defendants Rubenstein, Ballard, Greenwood and unnamed officers)

- COUNT III – The plaintiff alleges that his illegal placement in administrative segregation/Quality of Life program effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983 (against defendants Rubenstein, Ballard, Perry, McCloud and unnamed officers)

- COUNT IV [misnumbered in the Complaint as COUNT VI – on page 10] -  The plaintiff alleges that he was illegally charged with violating MOCC Policy Directive 335.00 for filing G-1 grievances which effectively deprived him of his constitutional and civil rights

6

under 42 U.S.C. § 1983 (against defendants Rubenstein, Ballard, McCloud and unnamed officers)

- COUNT V – the plaintiff alleges that defendants Rubenstein, Ballard, Perry, Collins, McCloud, Greenwood and unnamed officers implemented a policy of retaliation against the plaintiff and in violating MOCC Policy Directive 335.00 for filing G-1 grievances which effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983. The plaintiff also refers to this count as "RETALIATION TORT OF PROCESS."

- COUNT VI – The plaintiff alleges that defendants Rubenstein, Ballard, Crawford and unnamed officers implemented a policy of interference against him (concerning his access to the courts) which effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a). The plaintiff also refers to this count as "DENIAL OF ACCESS TO THE COURTS."

- COUNT VII – The plaintiff alleges that defendants Rubenstein, Ballard, McCloud and unnamed officers implemented a policy of denial/interference with all exercise of his religious rights which effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a). The plaintiff also asserts that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated, and refers to this count as "DENIAL OF FIRST AMENDMENT RIGHT UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSON[S] ACT."

- COUNT VIII [misnumbered in the Complaint as a duplicate COUNT VII – on page 14] – The plaintiff alleges that defendants Rubenstein, Ballard, McCloud and unnamed officers enforced policies that created an environment where false imprisonment would occur and effectively deprived him of his constitutional and civil rights under 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a). The plaintiff also refers to this count as "TORT OF FALSE IMPRISONMENT."

- COUNT IX [misnumbered in the Complaint as COUNT VIII] – The plaintiff alleges that the conduct of defendants Rubenstein, Ballard, Perry, Collins, McCloud, Crawford, Greenwood, Dixon and unnamed officers constitute a prima facie tort under state law, and he refers to this count as "PRIMA FACIE TORT."

- COUNT X – The plaintiff alleges that the conduct of defendants Rubenstein, Ballard, Perry, Collins, McCloud, Crawford, Greenwood, Dixon and unnamed officers constitute a tort of false imprisonment under state law, and he refers to this count as "TORT OF FALSE IMPRISONMENT."

(ECF No. 4 at 8-15.)  The plaintiff seeks only monetary relief on his claims.  (*Id.* at 16.)

### *The defendants' Motion to Dismiss*

On June 3, 2011, the defendants filed a Motion to Dismiss (ECF No. 26) and a Memorandum in support thereof (ECF No. 27).  The Motion to Dismiss asserts that the Complaint should be dismissed with prejudice because all of the defendants, in their official capacities, are entitled to immunity under the Eleventh Amendment.  (*Id.* at 5-6.)  The Motion to Dismiss further asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted against any of the defendants and that all of the defendants, in their individual capacities, are entitled to qualified immunity on the plaintiff's claims.  (*Id.* at 6-10.)  The Motion to Dismiss further asserts that some of the plaintiff's claims are barred by the applicable statute of limitations.  (*Id.* at 8-9.)  Finally, the Motion to Dismiss asserts that the plaintiff's claims are barred by res judicata and/or collateral estoppel, and that the plaintiff is merely forum shopping, due to his dissatisfaction with the state courts' prior decisions concerning his claims for relief.  (*Id.* at 10-11.)

### *The plaintiff's Response to the Motion to Dismiss*

On July 12, 2011, the plaintiff filed a "Motion of Objections to the Defendants' Motion to Dismiss" (ECF No. 31) and a Memorandum in support thereof (ECF No. 32).  These documents will collectively be referred to as "the plaintiff's Response to the

defendants' Motion to Dismiss." The plaintiff's Response addresses each of the defenses raised in the defendants' Motion to Dismiss, which will be further addressed below.

The defendants did not file a reply brief. This matter is ripe for determination.

## STANDARD OF REVIEW

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Both the plaintiff and the defendants have provided exhibits in support of their pleadings.  The undersigned has reviewed the documents, but does not rely upon them in proposing her rulings.  Accordingly, the defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

Before addressing the defenses raised by the defendants in their Motion to Dismiss, the undersigned believes it will be helpful to categorize the plaintiff's claims concerning their subject matter.  There are many layers to the plaintiff's Complaint and his claims are vague, at best.  However, the undersigned has categorized the claims into four areas:  (1) the plaintiff's claims concerning his disciplinary proceedings in April of 2008; (2) the plaintiff's claims concerning his classification in administrative segregation; (3) the plaintiff's retaliation claims; and (4) the plaintiff's claims alleging that certain conditions of his confinement in administrative segregation violated his rights under the First and Eighth Amendments of the United States Constitution.

First, the plaintiff alleges that he was denied substantive and procedural due process in his disciplinary hearing in April of 2008, which resulted in his placement in punitive segregation.  Based upon the undersigned's reading of the plaintiff's Complaint, this conduct appears to be specifically alleged and addressed in Counts I and II.

Counts I and III of the plaintiff's Complaint further appears to be alleging that, when the plaintiff was placed in administrative segregation, on or about June 4, 2008, and in later reclassification hearings, certain defendants relied upon misleading

evidence to extend the duration of the plaintiff's time in administrative segregation.[3] The undersigned notes, however, that the plaintiff has provided no factual allegations concerning any of his reclassification hearings, except for his September 17, 2009 hearing, which is further addressed below.

The plaintiff specifically alleges that certain defendants retaliated against him by charging him with another violation of MOCC Policy Directive 325.00, for insubordination/insolence, in response his filing of a grievance concerning his treatment in an Administrative Segregation Committee/Quality of Life Review Hearing on September 17, 2009. The plaintiff alleges that this conduct "chilled his constitutional and civil rights," primarily his right to redress grievances. This conduct is alleged and addressed in Counts IV and V.

The Complaint further alleges that certain conditions of confinement in the administrative segregation unit violated the plaintiff's Eighth Amendment and other constitutional rights. In particular, the plaintiff asserts that the conditions of confinement in the administrative segregation unit interfered with his right of access to the courts (Count VI) and the exercise of his religious rights (Count VII).

The remaining three counts in the plaintiff's Complaint (Counts VIII, IX, and X) allege claims of false imprisonment and a prima facie tort, which are grounded in state law, and appear to encompass conduct concerning both the plaintiff's disciplinary hearing and his continued confinement in administrative segregation.

---

[3]  The undersigned's staff contacted the West Virginia Division of Corrections' Central Office and determined that the plaintiff was held in a segregation unit between April 22, 2008 and May 4, 2010. He has served other periods in administrative or punitive segregation since that time that do not appear to be the subject of this Complaint.

Each count in the Complaint includes allegations of supervisory liability against Warden Ballard and Commissioner Rubenstein for failure to train, supervise and or discipline employees concerning the discharge of their duties.

The undersigned will now address these claims in light of the defenses raised in the defendants' Motion to Dismiss.

**A.    The claims against the Mount Olive Correctional Complex and the defendants in their official capacities are prohibited under the Eleventh Amendment to the United States Constitution.**

The defendants' Memorandum in support of their Motion to Dismiss first asserts that the plaintiff is seeking retroactive monetary relief from the state, which is prohibited by the Eleventh Amendment to the United States Constitution.   The defendants' Memorandum further states:

> Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).   The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979).   Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.   *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).   Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Id.* at 337.   Moreover, a State is not a "person" for purposes of 42 U.S.C. § 1983 litigation. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).
>
> In Plaintiff's Complaint, he sued MOCC, which is a State agency, and eight (8) individually named Defendants in their official capacities as employees of MOCC.  None of [the] Defendants consented to suit.  Plaintiff has not sought prospective relief, as permitted by 42 U.S.C. § 3626 in his Complaint, but he requested that he be awarded compensatory and

punitive damages for alleged past activities of State officials, during his time of incarceration.  Plaintiff is attempting to seek retroactive monetary relief from the State and the State's officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution.  Moreover, the State is not a "person" who Plaintiff can seek relief from in a 42 U.S.C. § 1983 action.  Therefore, Plaintiff's Complaint must be dismissed, with prejudice.

(ECF No. 27 at 5-6.)

The plaintiff's Response asserts that he is suing the defendants in their individual or personal capacities, while acting under color of state law and, thus, each defendant is a "person" within the meaning of section 1983 and subject to suit thereunder.  (ECF No. 32 at 4-5.)

As aptly noted by the defendants, the Eleventh Amendment bars suits for money damages against a state or state agencies.  To the extent that the plaintiff has named the Mount Olive Correctional Complex (MOCC)[4] as a defendant, MOCC cannot be sued under section 1983 because the facility is not a "person" under section 1983, and a suit for money damages against a State agency is barred by the Eleventh Amendment to the United States Constitution.  The same is true for each of the other defendants, to the extent that they are named in their official capacities.  However, the plaintiff's Response explains that he has sued the defendants in their personal or individual capacities, and their liability in that capacity must be separately addressed.

As argued in its Motion and Memorandum of Law, MOCC, as a facility of the State of West Virginia, is not a person who can be sued under section 1983.

---

[4]   MOCC is a building or facility operated by the West Virginia Division of Corrections, a state agency. The undersigned does not believe that the plaintiff actually intended to name MOCC as a defendant, but rather was referring to the fact that each of the other defendants is or was employed at the MOCC facility at the time the plaintiff's claims arose, except for defendant Rubenstein, who is employed by the West Virginia Division of Corrections at its Central Office.

Furthermore, the plaintiff's claim for monetary damages against MOCC and the other defendants in their official capacities is barred by the Eleventh Amendment, and the claim for punitive damages, in particular, is barred by West Virginia Code § 55-17-4.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against MOCC and the other defendants in their official capacities.

### B. Statute of limitations.

The defendants have also argued that some of the plaintiff's claims are barred by the applicable two-year statute of limitations. It is well-established that civil rights cases filed in federal court follow the analogous state limitation. *Blanck v. McKeen*, 707 F.2d 817 (4th Cir. 1983). West Virginia has a two-year statute of limitations for claims similar to those raised under § 1983 and other personal injuries. W. Va. Code § 55-2-12(b) (1981); *see McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278 (4th Cir. 1981); *Rodgers v. Corporation of Harpers Ferry*, 371 S.E.2d 358 (W. Va. 1988). As noted by the defendants, "there is no tolling provision in [West Virginia's] statute of limitations with regard to a prisoner's claim during his period of incarceration." *Craigo v. Marshall*, 331 S.E.2d 510, 513 (W. Va. 1985). (ECF No. 27 at 8.) The defendants' Memorandum further asserts:

> In Plaintiff's Complaint, he is seeking to recover damages for events that he stated took place in the year 2008. See (Complaint ¶¶ 16-24). In Count I, Count II, Count V, Count VIII and Count X, Plaintiff baldly asserted legal claims in these counts, absent sufficient facts establishing any violation of law. However, he also referenced Defendant Green [sic; Greenwood] and Defendant Ballard who were Defendants subjected to Plaintiff's allegations in relation to the 2008 events. Therefore, it is presumed that in said Counts, Plaintiff is attempting to hold Defendants liable for the events in the year 2008. Plaintiff filed his Complaint on

14

> February 9, 2011.  Plaintiff cannot seek to recover for events that occurred
> in the year 2008, which are barred by the applicable two (2) year statute of
> limitations.  Therefore, Count I, Count II, Count V, Count VIII, and Count
> X must be dismissed, because they are barred by the statute of limitations.

(*Id.* at 9.)

The plaintiff's Response asserts that his claims should not be considered time-barred because the statute of limitations was tolled until after he was released from administrative segregation, on or about May 4, 2010.[5]  (ECF No. 32 at 6).  The Response further states:

> Plaintiff argues that there are two (2) reasons that [sic] why his
> claims did not accrual [sic; accrue] until after he was released from [the]
> Quality of Life Program[:] (a) The West Virginia Prison Litigation Reform
> Act, West Virginia Code §25-1A-2; [and] (b) These were continuous acts of
> deprivation that did not conclude until plaintiff['s] release from [the]
> Quality of Life Program.

(*Id.*)  The plaintiff offers no further explanation or argument concerning these two assertions.

The plaintiff's Response further asserts that under the five-step analysis set forth in Syllabus Point 7 of *Bradshaw v. Soulsby*, 558 S.E.2d 681 (W. Va. 2001), the court must (1) identify the applicable statute of limitations for each cause of action, (2) identify when the requisite elements of the cause of action occurred, (3) determine whether the "discovery rule" should apply, based upon when the plaintiff knew or should have known, by the exercise of reasonable diligence, of the elements of a possible cause of action, (4) if the discovery rule does not apply, determine whether the

---

[5]  As previously noted, the undersigned's staff determined this date through consultation with the West Virginia Division of Corrections' Central Office.  The undersigned understands that, although the plaintiff has spent additional time in administrative or punitive segregation since May 4, 2010, that was the date he was returned to general population after the events that are the subject of his Complaint.  The undersigned further understands that the plaintiff is presently housed in a general population unit.

defendant(s) fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the potential cause of action, thus, tolling the statute of limitations, and (5) determine whether there is any other reason for tolling the statute of limitations.  (*Id*. at 6-7.)  Other than his bald statements that the statute of limitations should be tolled and that there are questions of material fact concerning these five elements, the plaintiff has offered no support for his assertion that his claims, or some of them, are not time-barred.  Thus, the court is not persuaded by the plaintiff's argument.

The majority of the plaintiff's claims, including all of his claims brought under section 1983, are subject to a two-year statute of limitation.  *See McCausland v. Mason County Bd. of Educ.* 649 F.2d 278, 279 (4th Cir. 1981).   His claims for false imprisonment are subject to a one-year statute of limitation.  *See* W. Va. Code § 55-2-12(c); *Wilt v. State Auto Mut. Ins. Co*., 506 S.E.2d 608, 613 (W. Va. 1998).  "[T]he accrual date of a § 1983 cause of action [however] is a question of federal law that is not resolved by reference to state law."   *Wallace v. Kato*, 549 U.S. 384, 388 (2007). [Emphasis in the original.] Generally speaking, accrual occurs "when the plaintiff has a complete and present cause of action."  *Id*. [Citations omitted.]

A number of the claims in the plaintiff's Complaint arise out of conduct that occurred in the year 2008.  Plaintiff's claims concerning his disciplinary hearing in April of 2008, and his subsequent placement in administrative segregation in June of 2008, accrued at the time of those decisions.   Similarly, the cause of action for false imprisonment, to the extent that the plaintiff's situation even meets the necessary elements therefor, accrued "once the victim becomes held pursuant to such process - when, for example, he is bound over by a magistrate or arraigned on charges."  *Id*. at

389.   To the extent that the plaintiff's disciplinary proceedings and placement in administrative segregation constituted a "detention without legal process," such a claim would have also accrued at the time that the plaintiff was found guilty and placed in a segregation unit, all of which occurred in 2008.

The plaintiff has not asserted a plausible reason for tolling the statute of limitations as to those claims.[6]  Furthermore, the plaintiff's argument that the statute of limitations did not run until his release from administrative segregation because the defendants' conduct constituted continuing violations is meritless.

Any claims stemming from the plaintiff's disciplinary proceedings arose between April 22, 2008, the date he was charged with the nine (9) violations, and May 1, 2008, the date that the hearing officer issued his hearing report.  At that time, the plaintiff knew the facts and the result of the disciplinary hearing and could have asserted his allegations that he was denied due process therein.

Furthermore, according to the plaintiff's Complaint, his alleged improper placement in administrative segregation, as opposed to punitive segregation, occurred on June 4, 2008.  Thus, the plaintiff's false imprisonment claims, which are subject to a one-year statute of limitations, were time-barred no later than June 4, 2009, and the statute of limitations on the plaintiff's section 1983 claims arising out of the disciplinary proceedings and the plaintiff's placement in administrative segregation expired no later than June 4, 2010.  Because the plaintiff did not file his Complaint until February 9, 2011, all of those claims are time-barred.

---

[6]  The plaintiff has asserted that the West Virginia Prison Litigation Reform Act (or "PLRA") tolls the statute of limitations.  This assertion appears to be based on the plaintiff's presumption that the exhaustion requirement in W.Va. Code § 25-1A-2 tolls the statute of limitations during the administrative remedy process.  He has cited no authority in support of this proposition.

Even if the plaintiff could successfully demonstrate a violation of his due process rights or other civil or constitutional rights in any of those proceedings, he was not diligent in his pursuit of such claims, and he has now lost the right to any relief thereon because of the expiration of the statute of limitations.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Counts I (to the extent that it concerns the plaintiff's disciplinary proceedings and his initial placement in administrative segregation), II, III (to the extent that it concerns the plaintiff's disciplinary proceedings and his initial placement in administrative segregation), VIII, and X are time-barred and must be dismissed.[7]

### C. The remaining claims against the individual defendants in their personal capacities.

The defendants' Memorandum in support of their Motion to Dismiss further argues that all of the individually named defendants are entitled to qualified immunity on the plaintiff's claims. (ECF No. 27 at 6-8.) As noted by the defendants, public officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000). (*Id.* at 6.)

---

[7] The defendants have asserted that Count V is also time-barred. To the extent that Count V is alleging that retaliation against the plaintiff for filing G-1 grievances took place prior to February 9, 2009 (two years before the filing of the Complaint), that may be true. The undersigned notes that the first grievance referenced in the plaintiff's Complaint is dated May 13, 2008, after he was placed in punitive segregation, but prior to the decision to hold him in administrative segregation. However, the undersigned reads Count V to be addressing the decision to charge the plaintiff with another rules violation in September of 2009, conduct which would not be time-barred. The undersigned will address Count V separately *infra*.

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), receded from by *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Saucier*, 533 U.S. at 201. If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The *Pearson* decision clarified that courts may exercise discretion in determining which of these two prongs to address first. 555 U.S. at 236.

The defendants' Memorandum states:

> In this matter, all of the individually named Defendants are entitled to qualified immunity. In particular, in relation to Defendant Rubenstein, Defendant Perry, Defendant Collins, Defendant Crawford, and Defendant Dixon, in Plaintiff's Factual Background section describing the events he claims violated his constitutional rights, there is not one (1) allegation in relation to any of these named Defendants. (Complaint ¶¶ 16-37). In Count I through Count X of his Complaint, apart from baldly asserting these Defendants somehow violated the law, Plaintiff gave no factual background establishing that any of these Defendants engaged in any actions or inactions that violated the clearly established statutory and/or constitutional rights of Plaintiff during his incarceration. (Complaint ¶¶ 38-77). There is nothing in Plaintiff's Complaint that establishes any of these named Defendants engaged in manifest unlawful conduct against him. Plaintiff has not articulated any factual basis against any of these named Defendants that would deprive them of their immunity from suit under the doctrine of qualified immunity. Therefore, Defendant Rubenstein, Defendant Perry, Defendant Collins, Defendant Crawford, and Defendant Dixon must be dismissed from suit on the basis of qualified immunity.

(ECF No. 27 at 6-7.)

Concerning Defendants Greenwood, Ballard and McCloud, the defendants'
Memorandum states:

> In the Factual background section of Plaintiff's Complaint, he pled
> facts regarding Defendant Greenwood, Defendant Ballard and Defendant
> McCloud; however, none of the factual allegations pled by Plaintiff
> establish that any of these Defendants violated any known statutory
> and/or constitutional right of Plaintiff.  (Complaint ¶¶ 16, 19, 26).  The
> only thing the facts alleged by Plaintiff demonstrate is that he simply did
> not like the rulings he encountered by officials in prison, which is not
> sufficient to overcome the doctrine of qualified immunity.
>
> In relation to Defendant Greenwood, Plaintiff alleged that he felt it
> was improper that a final Hearing Report was prepared by Defendant
> Greenwood (in the year 2008), because Plaintiff elected not to attend his
> hearing (Complaint ¶ 17-18).  Plaintiff had notice of the hearing and
> elected not to attend.  Defendant Greenwood had every right to issue a
> Hearing Report regarding his position as a Correctional Hearing Officer.
> There are no facts demonstrating that Defendant Greenwood violated any
> known statutory or constitutional right of Plaintiff, and there are no facts
> demonstrating that Defendant Greenwood engaged in manifest
> unlawfulness against Plaintiff that would overcome Defendant
> Greenwood's right to qualified immunity.  Therefore, Defendant
> Greenwood must be dismissed from suit on the basis of qualified
> immunity.
>
> In relation to Defendant Ballard, in Plaintiff's Factual Background,
> he claimed that Defendant Ballard acted improperly by affirming the
> decision of Defendant Greenwood.  (Complaint ¶ 19).  Again, similar to
> Defendant Greenwood, Plaintiff did not plead any facts establishing that
> Defendant Ballard engaged in any acts that were manifestly unlawful and
> which violated Plaintiff's statutory or constitutional rights.  Plaintiff may
> not have liked the ultimate findings of Defendant Ballard; however, his
> like or dislike of a ruling is not sufficient to overcome the qualified
> immunity afforded to Defendant Ballard.  Therefore, Defendant Ballard is
> entitled to qualified immunity.
>
> In relation to Defendant McCloud, similar to Defendant Ballard, the
> only factual allegations alleged against Defendant McCloud demonstrate
> he [Plaintiff] simply did not like Defendant McCloud's ruling on a
> grievance he filed.  (Complaint ¶ 27).  Plaintiff pled no facts establishing

that Defendant McCloud acting [sic; acted] manifestly unlawful towards him.  Again, to overcome the doctrine of qualified immunity, Plaintiff is required to plead facts sufficient to show that Defendant McCloud knowingly violated his clearly established statutory or constitutional right(s).  He failed to do so.  Defendant McCloud is entitled to dismissal from the suit on the basis of qualified immunity.

(*Id.* at 7-8.)

The defendants' Memorandum further asserts that, under the *Iqbal* standard, the plaintiff's Complaint "fails to state a claim that is plausible on its face," against all of the defendants because the Complaint contains threadbare recitals of statutes and constitutional amendments and conclusory statements that these defendants violated the plaintiff's rights, but nothing more.  The Memorandum further states:

Moreover, in Count I through Count X, Plaintiff merely listed the names of each of Defendants in relation to each count and simply stated legal conclusions indicating Defendants were liable in this matter.  For example, in every count, Plaintiff claimed Defendants failed to train, supervise, discipline properly, which was a policy of indifference.  However, Plaintiff did not plead one (1) fact regarding how Defendants failed to train, supervise and/or discipline anyone.  As the United States Supreme Court has made clear, "threadbare recitals of the elements of a cause of action," such as those in Plaintiff's Complaint which are only supported by his mere "conclusory  statements" is not sufficient to withstand dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Therefore, Defendants request the Court dismiss Plaintiff's Complaint, with prejudice.

(*Id.* at 9-10.)

The plaintiff's Response asserts that he has alleged the deprivation of a clearly established constitutional right.  His Response elaborates as follows:

The Defendants never took any actions to reversed [sic; reverse] the actions of any of their subordinate [sic; subordinates], while fully aware that Plaintiff had a constitutional and statutory right to the procedural and substantive due process of a disciplinary hearing, and that the denial of such would actively be violating *WV Code § 62-13-4 and MOCC Policy Directive 325.00.*

* * *

Because these Defendant[s] refused to act in compliance with their own "MOCC" Policy Directives and/or Operational Procedures between 2008-2010 and stopped the illegal deprivation of Plaintiff['s] rights to remained [sic; remain] in the general population, therefore his placement in the Quality of Life Program was arbitrary and egregious dereliction of duty under color of state law. *Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322, 1980 W. Va. LEXIS 582; *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003).

This Court is required to examines [sic; examine] the objective reasonableness of these Defendants['] conduct[,] *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996)[,] and in light of such facts, its [sic; it's] obvious that their Motion to Dismiss should be denied.

(ECF No. 32 at 5-6.)

The undersigned will address each count of the plaintiff's Complaint in light of these principles.

### Counts I and III

The undersigned has addressed and recommended the dismissal of Counts I and III, in part, and Count II in its entirety, to the extent that those counts focused on the plaintiff's April 2008 disciplinary proceeding and his initial placement in administrative segregation, because those claims are time-barred. However, Counts I and III also appear to be arguing that decisions made by the Administrative Segregation Committee to house the plaintiff in administrative segregation violated his due process rights and constituted cruel and unusual punishment during a time period that is not barred by the statute of limitations – that is, decisions made subsequent to February 9, 2009.

In Count I, the plaintiff alleges that defendants Rubenstein, Ballard, Perry, McCloud, Crawford, Greenwood, Dixon, and other unnamed officers:

22

> Were either directly responsible for introducing and/or knowingly permitting misleading evidence at . . . the plaintiff's . . . reclassification hearings.  The malfeasance of these defendants resulted in an extension in . . . the plaintiff's duration in . . . administrative segregation. * * * As a direct and proximate result of the defendants' actions, plaintiff suffered injuries, including the deprivation of his appellate and civil rights, severe emotional distress, a serious loss of rehabilitation, and loss of wages.

(ECF No. 4 at 8.)  In Count III, the plaintiff alleges that defendants Rubenstein, Ballard, Perry, McCloud and other unnamed officers placed him in Administrative Segregation/Quality of Life Program and deprived him of his constitutional and civil rights.  Construed liberally, these allegations appear to invoke the Due Process Clause of the Fourteenth Amendment.

The overriding question before this court is whether the plaintiff has a liberty interest, protected by the Due Process Clause, in not being classified in administrative segregation.  If he has no protected liberty interest, the due process violations he alleges are not actionable.  *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).  It appears to the court that the plaintiff has missed this point; the alleged procedural flaws do not themselves establish a violation of the Due Process Clause if the plaintiff has no liberty interest to protect.

The Supreme Court, in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), recognized that

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  [Citation omitted.] But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Claus of its own force, [citations omitted], nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.  [Emphasis added.]

The Court noted that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

> We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. * * * Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. * * * Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

*Id.* at 486.  The Court rejected the position that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation.  *Id.* at 484.

This Court concludes that an inmate who alleges that his right to due process of law was denied in connection with a reclassification of his custody status to administrative segregation must show that he had a protected liberty interest in his prior non-administrative segregation status because (1) administrative segregation imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or (2) that administrative segregation exceeds similar, but totally discretionary, confinement in either duration or degree of restriction, or (3) that administrative segregation worked a major disruption in his environment.

The authority addressing the constitutional implications of long-term administrative segregation since *Sandin* is varied. In *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997), the Fourth Circuit, applying *Sandin*, established that:

> In order to determine whether the inmates possessed a liberty interest, we must compare the conditions to which they were exposed in administrative segregation with those they would expect to experience as an ordinary incident of prison life. [Citation omitted.] This analysis necessarily is fact specific in that it requires a determination of the conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life.

*Beverati* further notes, however, that whether the conditions impose an atypical and significant hardship creating a liberty interest is a question of law. *Id.*

In the decision of *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999) (hereinafter *Five Percenters*), the Fourth Circuit addressed the long-term segregation of prisoners who were members of a purported religious group that was classified as a security threat. *Five Percenters* found that the fact that the inmates were confined to their cells for twenty-three hours per day without radio or television, that they receive only five hours of exercise per week, and that they may not participate in prison work, school or study programs, though highly restrictive, was not unconstitutional. Moreover, the Court found the indefinite duration of the inmates' segregation is simply one of many factors to consider in determining the constitutionality of long-term segregation. 174 F.3d at 471-72.

The Supreme Court again addressed this issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005). There, the Court found that the restrictive conditions in the Ohio State

Penitentiary, a "supermax" facility[8], did create an atypical and significant hardship within the correctional context, thus giving rise to a liberty interest in avoiding confinement therein.  545 U.S. at 223-224.  The Court further found, however, that the Ohio Department of Corrections' policy concerning placement and continued confinement at the supermax facility provided a sufficient level of process to satisfy due process requirements.  *Id.* at 225.  The conditions discussed in *Wilkinson* are these: almost all human contact is prohibited, including cell-to-cell conversation, cell lights may be dimmed, but remain on for twenty-four hours, and the inmates are limited to one hour of exercise per day in a small indoor room.  *Id.* at 210-211.  Furthermore, placement in the Ohio supermax may be for an indefinite period with an initial 30-day assessment, followed by an annual review.  *Id.* at 211.  The *Wilkinson* Court stated that, "while any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context" which triggered a protected liberty interest in avoiding placement in the "supermax."  *Id.* at 224.

Nationwide, decisions since *Wilkinson* have been split as to whether a liberty interest exists in avoiding placement in administrative segregation, based largely on each court's analysis of the specific facts of the cases before them.  As one court previously noted, "[t]here is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors . . . requires case by case, fact by fact consideration.'"  *Ramirez v. Galaza*, 334

---

[8]  As noted in *Wilkinson*, "'Supermax' prisons are maximum-security facilities with highly-restrictive conditions, designed to segregate the most dangerous prisoners from the general population.  Their use has increased in recent years, in part as a response to the rise of prison gangs and prison violence."  545 U.S. at 209.

F.3d 850, 861 (9th Cir.2003) (citation omitted).  Recently, within the Fourth Circuit, the United States District Court for the District of Maryland, in granting summary judgment to the defendants, found that the conditions of administrative segregation at the Maryland facility where the plaintiff was incarcerated did <u>not</u> create an atypical and significant hardship, although the same court had found that confinement at Maryland's "supermax" facility had implicated due process protections.  *Stedman v.* White, 2011 WL 2746730 *6 (D. Md., July 11, 2011).

The plaintiff has implied that administrative segregation at MOCC does impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life in that he has alleged that, during his time in administrative segregation, he was denied religious fellowship, education and rehabilitation, as well as adequate heating, food and clothing.  However, the plaintiff's Complaint and his Response to the Defendants' Motion to Dismiss do not elaborate on these conditions of confinement or the issue of whether administrative segregation at MOCC imposes an atypical and significant hardship in relation to ordinary incidents of prison life.  Nor have the defendants addressed this issue.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint, liberally construed, does not contain "enough facts to state a claim to relief that is plausible on its face."  The plaintiff's due process claims have not alleged more than legal conclusions couched as factual allegations.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the remaining allegations in Counts I and III of the plaintiff's Complaint fail to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal*.

### Count IV and V

In Counts IV and V of his Complaint, the plaintiff alleges that defendants Rubenstein, Ballard, McCloud and other unnamed officers illegally charged him with violating MOCC Policy Directive 335.00 for filing G-1 grievances, and that this occurred as part of a policy of retaliation against the plaintiff. Again, the plaintiff does not adequately address specific facts related to these claims when addressing those particular counts; however, it can be derived from the factual background section of the Complaint that the plaintiff is alleging that defendant McCloud's decision to charge the plaintiff with insolence/insubordination, following the filing of grievances concerning the plaintiff's September 17, 2009 Administrative Segregation/Quality of Life Review Hearing, was done in retaliation for the filing of his grievances. The plaintiff alleges that the conduct of all of the named defendants, including defendants Ballard and Rubenstein's failure to properly train and supervise their employees, caused the plaintiff "to suffer for filing G-1 grievances, which chilled his constitutional and civil rights as stated in the Complaint." (ECF No. 4 at 11-12.)

A plaintiff suing under section 1983 must establish three elements in order to prove a First Amendment retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (stating that "a showing of adversity is essential to any retaliation claim"). Third, the plaintiff must

demonstrate that a causal relationship exists between the protected speech and the defendant's retaliatory action. *See Huang*, 902 F.2d at 1140.

Thus, for an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimensions. *Adams*, 40 F.3d at 74-75.

*Adams* further held that prisoners do not have a constitutional right of access to the grievance process, *id.* at 75, which, alone, forecloses any relief on the plaintiff's retaliation claims. The plaintiff has merely alleged that the defendants, McCloud in particular, retaliated against him for filing grievances. Because the plaintiff has no constitutional right of access to the grievance process, he cannot claim a denial of a constitutional right based upon the alleged attempt to chill his filing of grievances.

If the plaintiff is attempting to assert a protected speech claim under the First Amendment on some other basis, even viewed liberally, the Complaint gives no indication of the content of the speech. Moreover, the Complaint makes no allegation that the plaintiff's speech was chilled. The filing of the instant lawsuit shows that the write-up did not dissuade the plaintiff from challenging prison authorities' conduct. Thus, the plaintiff has not met the elements for a First Amendment retaliation claim.

Again, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint, liberally construed, does not contain "enough facts to state a claim to relief that is plausible on its face." The plaintiff's retaliation claims have not alleged

more than legal conclusions couched as factual allegations, or factual allegations concerning conduct that is not protected speech.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Counts IV and V of the plaintiff's Complaint fail to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal*.

### Count VI

In Count VI of his Complaint, the plaintiff alleges that defendants Rubenstein, Ballard, Crawford, and other unnamed defendants have implemented a policy of interference that has denied him access to the courts.  The Supreme Court addressed inmates' right of access to the courts in *Lewis v. Casey*, 518 U.S. 343 (1996).  In that case, the Supreme Court reviewed its decision in *Bounds v. Smith*, 430 U.S. 817 (1977), as follows:

> The right that *Bounds* acknowledged was the (already well-established) right of access to the courts.  In the cases to which *Bounds* traced its roots, we had protected that right by prohibiting State prison officials from actively interfering with inmates' attempts to prepare legal documents, or file them, and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Lewis*, 518 U.S. at 350. [Citations omitted.]  Having established the requirement that an inmate show "actual injury," the *Lewis* majority opinion then limited the cases in which "actual injury" must be shown.

In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355.  The plaintiff has not alleged any specific facts to support his claim.  The plaintiff's state habeas corpus proceeding was dismissed for failure to exhaust his administrative remedies concerning the specific claims raised therein.  The plaintiff has not sufficiently alleged that any actions of the three named defendants, or any other unnamed defendants, prohibited him from seeking redress on any issues in the state or federal courts.[9]

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Count VI of the plaintiff's Complaint fails to state a claim upon which relief can be granted against defendants Rubenstein, Ballard, Crawford and other unnamed defendants, and should be dismissed pursuant to *Twombly* and *Iqbal*.

### Count VII

In Count VII of his Complaint, the plaintiff alleges that defendants Rubenstein, Ballard, McCloud and other unnamed defendants have implemented a policy of denial or interference with the plaintiff's exercise of his religious rights.  The plaintiff makes a blanket statement, without further support, that the defendants' conduct has violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

---

[9]   The undersigned is very familiar with the plaintiff's filings in this federal court, in particular, the plaintiff's habeas corpus petition, upon which he received due consideration of all of his claims. (*McLaurin v. Ballard*, 2:00-cv-00275)(Copenhaver, J.)

RLUIPA provides as follows:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  "If a plaintiff produces prima facie evidence" of an RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the [policy] or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."  *Id.*, § 2000cc-2(b).  *See Smith v.* Ozmint, 578 F.3d 246, 250 (4th Cir. 2009).

A "substantial burden on the religious exercise of a person" "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand.'" *Id.* at 251 (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).  Again quoting from *Lovelace*, the *Smith* decision notes that courts may "not judge the significance of the particular belief or practice in question." *Lovelace* 472 F.3d at 187 n.2; *id.*  RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7).

The plaintiff has neither identified his religion, nor the religious beliefs or practices he is alleging to have been substantially burdened.  At most, his Complaint makes a blanket statement that he filed grievances regarding the denial of Christian fellowship.

The undersigned proposes that the presiding District Judge **FIND** that Count VII of the plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed under *Twombly* and *Iqbal*.

### Counts VIII, IX and X

As noted previously, Counts VIII and X allege claims related to "false imprisonment."  Count VIII alleges false imprisonment under section 1983, while Count IX alleges false imprisonment under state law.   From a review of the plaintiff's Complaint, it is uncertain whether these claims relate to the plaintiff's placement in disciplinary segregation (because Count X references defendant Greenwood, the CHO at the plaintiff's April 2008 disciplinary hearing) or whether these claims concern the plaintiff's placement in administrative segregation.   Either way, the plaintiff cannot succeed on these claims.

First, as previously addressed, any claims related to the plaintiff's disciplinary proceedings and his initial placement in administrative segregation are untimely.  Furthermore, the undersigned notes that there is no actual cause of action for false imprisonment under section 1983.  Rather, such a claim is viewed as an unlawful seizure and is addressed under the Fourth Amendment.  *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001).

Pursuant to West Virginia law, "the gist of [an] action for false imprisonment is illegal detention of a person without lawful process or by an unlawful execution of such process." *Riffe v. Armstrong*, 477 S.E.2d 535, 549 (W. Va. 1996). Construing the plaintiff's claims liberally, at best, he is alleging that his placement and continued confinement in a segregation unit was a detention without lawful process or by an unlawful execution of such process. However, the plaintiff, being legally incarcerated on his criminal convictions, cannot demonstrate that he has been illegally detained simply because he has been placed in a segregated unit, and such circumstances do not give rise to a false imprisonment claim. *See, e.g., Clark v. Michigan Dept. of Corrections*, 555 F. Supp. 512 (D. Mich. 1982) (false imprisonment claim will not lie for unlawfully assigning a state prisoner to administrative segregation); *Wilson v. Stolman*, 2005 WL 1836181 (E.D. Cal. Aug. 1, 2005) (placement in administrative segregation does not give rise to a false imprisonment claim under state law).

In Count IX of his Complaint, the plaintiff alleges that the conduct of all of the named defendants constitutes a "prima facie tort." The plaintiff alleges nothing further in support of this claim, and it is equally meritless.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Counts VIII, IX and X of the plaintiff's Complaint fail to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal*.

### D. Supervisory liability claims.

In nearly all of the counts of his Complaint, the plaintiff has alleged that the "Department of Corrections" has failed to adequately train, supervise and discipline its employees to prevent them from violating clearly established laws and that such a policy

of deliberate indifference was the proximate cause of the plaintiff's alleged constitutional violations and injuries.   These allegations appear to be directed at defendants Rubenstein and Ballard, and are largely grounded in the Eighth Amendment's prohibition against cruel and unusual punishment.

Generally speaking, there is no "supervisory liability" under 42 U.S.C. § 1983, as *respondeat superior* cannot form the basis of a claim asserted under the statute.  *Id.* at *3, citing *Rizzo v. Goode*, 423 U.S. 362 (1976).  Instead, liability must be premised upon each defendant's personal constitutional violations.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.*, at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*, at 837.

Prior to the Supreme Court's ruling in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Fourth Circuit established "the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). A named supervisor may be liable for acts of subordinates if the official was aware of a pervasive, unreasonable risk of harm from a specified source and failed to take corrective action as a result of his deliberate indifference or tacit authorization of the offensive practice. *Id.* at 373.

Liability may attach where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 372. The relevant inquiry is whether the defendants acted "wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991).

The undersigned has proposed that all of the plaintiff's claims be dismissed for failure to state a claim upon which relief can be granted or for being untimely. Accordingly, any allegations of supervisory liability related to those claims must also be dismissed.

### E.      Collateral estoppel and res judicata.

The defendants' Memorandum also addresses the plaintiff's prior attempts to obtain relief concerning the issues raised in his Complaint from courts in the State of West Virginia.  The Memorandum states:

> "Res judicata precludes the assertion of a claim that has already been 'litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Kalos v. Greenwich Ins. Co.*, 404 Fed. Appx. 792 (4th Cir. 2010) (per curiam) (Citations omitted).   "The doctrine of collateral estoppel precludes relitigation of issues that are identical to issues actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Id.* at 792 (Quotation omitted).  "Application of these doctrines constitutes a legal question." *Id.* at 792.  As *Erie v. Tompkins*, 304 U.S. 64 (1938) and its progeny have established, federal policy strongly disfavors forum-shopping.
>
>          In Plaintiff's Complaint, he acknowledged that he has already filed two (2) separate actions in West Virginia State Court regarding the alleged grievances he has had, during his confinement at MOCC, which is the subject of his present Complaint with this Court (Complaint ¶¶ 28-33).  In particular, Plaintiff has alleged he filed a Petition for a Writ of Habeas Corpus with the Fayette County Circuit Court regarding his alleged concerns with his confinement.  (Complaint  ¶ 30; Fayette County Writ: Ex. 1).  The Circuit Court of Fayette County refused Plaintiff's Petition for failing to exhaust his administrative remedies.  (Fayette County Order: Ex. 2).  Plaintiff filed an appeal with the West Virginia Supreme Court regarding the Fayette County Circuit Court's ruling, which was also denied.  (Complaint ¶ 30).  Thereafter, Plaintiff filed a Petition for a Writ of Mandamus Original Jurisdiction with the Kanawha County Circuit Court, again, regarding the alleged concerns of his confinement. (Kanawha County Petition: Ex. 3).  The Circuit Court of Kanawha County denied Plaintiff's Writ of Mandamus.  (Kanawha County Order:  Ex. 4). Now, Plaintiff filed a Complaint with this Court regarding the alleged concerns of his confinement, which were already the subject of two (2) West Virginia State Court actions.  Plaintiff is clearly forum shopping, which is strongly disfavored by federal policy.  Moreover, both the Circuit Court of Fayette County and the Circuit Court of Kanawha County denied his requested relief, which were final adjudications on the merits of

Plaintiff's claims. Therefore, Plaintiff's claims are barred by the doctrine of res judicata and/or collateral estoppel.

(ECF No. 27 at 10-11.)

The plaintiff's Response challenges the application of both res judicata and collateral estoppel to his claims. His Response states:

> Because the Defendants cannot show in their motions, exhibits or any other document that they and/or Plaintiff ever had a hearing in State Court on these claims. Privity requires the interests of a party against whom claim or issue preclusion is asserted were represented adequately by the party's purported privity at the initial hearing or trial . . . which did not occur in this case, the State Court simply summarily dismiss [sic; dismissed] Plaintiff['s] petitions.
>
> The absolute identical legal issue is fundamental to a finding of privity, and the mere fact that the two parties are interested in proving or disproving the same facts alone will not create privity.

(ECF No. 32 at 7-8.)

Because the undersigned recommends that the defendants' Motion to Dismiss be granted for other reasons, it is not necessary to address this further.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Defendants' Motion to Dismiss (ECF No. 26) and dismiss this civil action with prejudice.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from

the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

February 21, 2012

Mary E. Stanley
United States Magistrate Judge